IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JUAN CARRERO-VASQUEZ, #358107, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. RDB-12-1264 |
| GREGG L. HERSHBERGER, *et al*. | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

I.   PROCEDURAL HISTORY

Pro se plaintiff Juan Carrero-Vasquez ("Plaintiff") filed this Complaint pursuant to 42 U.S.C. § 1983 on April 25, 2012, when Plaintiff was held at the Jessup Correctional Institution ("JCI"). He names Gregg L. Hershberger, the Medical Department of the Roxbury Correctional Institution, P.A. Crystal Swecker, Greg Davis, Dr. Jonathan Thompson, Mary Westfall, Stacey King, Marcy McDowell-Duddy, Salik Ali, the Medical Department of the Jessup Correctional Institution, P.A. Ross, Nurse Jeff, Corizon Medical Services, and Operations Headquarters as Defendants. He claims that he has been denied treatment for a right upper body injury allegedly caused by working as a "linebacker"[1] in the cafeteria of the Maryland Correctional Institution in Hagerstown ("MCIH"). (Compl. at Ex. 2-A).

Plaintiff complains that in January of 2010, his right arm developed numbness. He filed a sick-call slip and was seen by a nurse practitioner who referred him for follow-up evaluation, but he was never seen. Plaintiff claims that the numbness intensified and that he was subsequently

---

[1] Plaintiff uses this expression to describe his employment in the cafeteria.

examined by several nurses who prescribed Ibuprofen and several days of bed rest. He contends that when he was seen by a Physician's Assistant ("PA") in October of 2010, he was prescribed a muscle relaxer, steroids, non-inflammatory drugs, and x-rays. In a chronological recitation which discusses the treatment, delays in care, and results from assessments, Plaintiff alleges he did not receive follow-up treatment until December of 2010, and this only occurred due to his "insistency."[2] He contends he was seen multiple times by medical staff, but no constructive action was taken, except that he was prescribed medication for a possible pinched nerve. Although x-rays were ordered for his neck area, they were never conducted. Plaintiff claims that he was seen by a prison doctor in March of 2011, and an MRI was ordered. A physical examination noted joint tenderness and restriction of movement. On April 21, 2011, Plaintiff was seen by a Pain Management and Rehabilitation physician at Bon Secours Hospital ("BSH") and was diagnosed with "myofascial pain syndrome with trigger point." (Comp. at Ex. 2-A). The doctor ordered physical therapy ("PT") with ultrasound, hot pack to the trapezius and scapulae muscles, and myofascial release techniques. Plaintiff contends that in June of 2011, he was taken off a muscle relaxer (Baclofen), given Elavil, and told by a doctor that nothing was wrong. He states that he then started to receive PT evaluation, but the following month this was changed to "self-management."

Plaintiff further complains that when seen by the regional medical director and a BSH physician in November and December of 2011, he was given conflicting assessments. He notes that he was transferred to JCI in December of 2011. When he was seen by JCI medical staff in January of 2012, he was referred to the neurology and orthopedic departments to reinstate his nerve pain medications, but was later denied those appointments. In summation, Plaintiff complains that it

---

[2] Plaintiff also peppers his Complaint with allegations regarding the responses and non-answers he received from prison administrators, such as Defendant Hershberger, in response to his many administrative remedies and complaints expressing his dissatisfaction with prison medical care. (Compl. at Ex. 1-B &

took two years for prison personnel department to do anything about the tenderness to his right upper body, that his prescription for Neurontin was not fully given, and that although seen many times by health care staff, he was never treated.

## II. PENDING MOTIONS

Currently before the Court are Defendant Hershberger's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 19), and Defendants Ali, Corizon, King McDowell-Duddy, Medical Department of Jessup Correction Institution, Medical Department of Roxbury Correctional Institution, Moss, Swecker, Thompson, and Westfall's (hereinafter referred to as the "Medical Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 30).[3]   Plaintiff has filed Opposition responses.  (ECF Nos. 29 & 32).  No hearing is necessary.  *See* Local Rule 105.6. (D. Md. 2011).  For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, shall be GRANTED.

## III. STANDARD OF REVIEW

Where a petitioner proceeds without counsel, his filing is to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to

---

Ex. 2-A).
   [3] Service of process was never effected on Defendants Greg Davis or "Nurse Jeff."  This Court finds for reasons discussed *infra* at pages 5 through 9 that the Complaint against these Defendants shall be

determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375

---

dismissed.

(D. Md. 2001) (citation omitted).  Indeed, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## IV.   DISCUSSION

1.   Facts

There is no dispute that Plaintiff was first seen for his right shoulder pain complaints in January, 2010, while housed at MCIH.  He was evaluated by nurses and physicians and received a recommendation for an MRI and outpatient consultation with a pain management specialist.  Wexford Utilization Management reviewed the recommendation and denied the request for an MRI. Plaintiff did, however, receive a pain management consultation with a BSH physician on several occasions and received treatment several times throughout his stay at MCIH.  When transferred to the Roxbury Correctional Institution ("RCI") in September of 2010, he received additional assessments, examinations, and care, including PT and a number of oral and injected medications from doctors, nurses, and PAs in the Chronic Care Clinic ("CCC").  (ECF No. 30 at Exs. 2- 6, 9-23, & 40).  On June 7, 2011, he was evaluated by Dr. Thompson at RCI in the CCC.  (*Id*. at Thompson Aff.).  Dr. Thompson renewed Plaintiff's Neurontin and Naproxen medications and discontinued the Baclofen, replacing it with Elavil. On August 15, 2011, Plaintiff was treated by Dr. Getachew, who found no deformities or swelling associated with Plaintiff's shoulder and noted a normal range of motion ("ROM").   (ECF No. 30 at Thompson Aff.  & Exs. 20 & 32).   Plaintiff was again seen by Dr. Thompson on September 8, 2011, regarding abnormal lab tests and decided to order new lab tests. When attempts to draw blood were unsuccessful and the nurse attempted to draw blood from his non-injured arm, Plaintiff refused.  (*Id*. & Exs. 33& 34).  Plaintiff met with Thompson twice in October

of 2011, and was informed that an MRI had been denied and that his Neurontin medication would not be reinstated.   (*Id*., Exs. 35-36).

In November of 2011, he was seen by Regional Medical Director Dr. Sadik Ali, who reviewed Plaintiff's administrative remedy procedure ("ARP") grievances and discussed Plaintiff's medical treatment and how his right shoulder pain began.   Dr. Ali examined Plaintiff's shoulder and found no indicators for a rotator cuff injury, tenderness, or ROM abnormality.   (*Id*.).   Plaintiff met again with Dr. Thompson on December 9, 2011, after he had been treated by the pain management specialist at BSH.   His Baclofen prescription was reinstated and a request was submitted for Plaintiff to receive PT and trigger point injections ("TPI").[4]  This was approved by Wexford three days later and Plaintiff received these treatments.   (*Id*., Exs. 37-39).   Throughout January and February of 2012, Plaintiff was seen by nurses and PAs at JCI for pain management issues and subsequently was seen by a physician at BSH for additional trigger point injections. (*Id.* at Exs. 24-25 & 40).   He was also seen by nurses and PAs in the CCC at JCI in March and April of 2012.  (*Id*. at Ex. 40).   In May of 2012, he was transferred to the Western Correctional Institution ("WCI"), where he received examinations from PAs and a physician, who continued his prescribed medications.  (*Id*.).

In his Oppositions, Plaintiff asserts that he filed several grievances regarding his medical care and that Defendant Hershberger failed to take "remedial" action in response.  (ECF No. 29).   He affirms that delays in providing medical treatment to an inmate where the prison staff, such as Warden Hershberger, is fully aware of the need for care may constitute deliberate indifference under the Eighth Amendment.    (ECF No. 29.).   He further claims that the Medical Defendants provided

---

[4] TPI is a pain treatment option. The procedure is used to treat painful areas of muscle that contain trigger points, or knots of muscle, that form when muscles do not relax. Many times such knots can be felt under the skin. *See, e.g.*, www.webmd.com/pain-management/guide/trigger-point-injection.

him inconsistent and delayed treatment. He asks to be sent to an outside specialist for his right shoulder pain. (ECF No. 32). Plaintiff contends that his shoulder tends to be more sore and achy in the evening, which causes him restless sleep. He deems the ongoing and continuous care he has received to be "irrelevant" because he continues to experience irreparable pain in his shoulder. (*Id.*). Plaintiff seemingly complains that he is a potential candidate for surgery or an electromyogram ("EMG") study[5] and disputes the sufficiency of the professional judgments of prison physicians. He additionally claims that he was not seen as scheduled for follow-up appointments or for an MRI as requested by a physician, and that his condition has gotten worse. He asserts that he has proven that Defendants have intentionally denied him access to adequate medical care and interfered with his treatment plan. (*Id.*).

  2.  Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.[6] *See Estelle v. Gamble*, 429 U.S. 97,

---

[5] An EMG measures the electrical activity of muscles at rest and during contraction. This study is usually performed as a workup for pain, numbness or tingling in an arm or leg. It tests the condition of the nerves from the spine into the extremity to the foot or hand. *See, e.g.*,www.emgtest.com.

[6] The medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County,* 394 F.3d 510, 512-13 (7th Cir. 2005).

106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference "because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." *Brice v. Va. Beach Correctional Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

Assuming, *arguendo*, that Plaintiff's underlying medical condition is sufficiently serious to support an Eighth Amendment claim, the Court finds no violation. Plaintiff has simply failed to come forward with sufficient evidence to support his claim that the Medical Defendants' conduct was deliberately indifferent to his right shoulder trauma. He was repeatedly seen by prison healthcare staff from January of 2010 to May of 2012; received oral medications in the form of Ibuprofen, Neurontin, Naproxen, Robaxin, and Baclofen;[7] had consultations with a pain management specialist at BSH; was given trigger point injections for pain management on three separate occasions; and underwent PT for his shoulder problem. While there may have been interruptions in the receipt of the treatment, this Court finds that the delays were not constitutionally significant.

The Court finds no willful conduct to deny medical care on the part of Warden Hershberger, who had no personal involvement in Plaintiff's medical care and was entitled to rely on the judgment of healthcare staff. Imposing § 1983 liability on the part of a supervisory defendant such as Warden Hershberger requires a showing that "(1) the supervisory defendant failed to promptly provide an inmate with needed medical care, (2) the supervisory defendant deliberately interfered with the prison doctors' performance, or (3) that supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984) (supervisory liability for an inmate's beating by prison guards).

---

[7] These medications are associated with the treatment for reduction of pain and tenderness and as muscle relaxants.

9

## V.  CONCLUSION

For the aforementioned reasons, the Court finds no Eighth Amendment violation.

Defendants' Motions, construed as motions for summary judgment, shall be granted.

A separate Order follows.


Dated:       November 5, 2012           /s/_____
                                        Richard D. Bennett
                                        United States District Judge